

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 3, 2004

The Honorable Frank Madla
Chair, Intergovernmental Relations Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0226

Re: Whether, consistently with section 573.041 of the Government Code, a home-rule municipality may appoint a department head who is related to the mayor within the third degree by consanguinity or the second degree by affinity if the city charter authorizes the city manager to "appoint, subject to consultation with the Board of Commissioners, all department heads" (RQ-0180-GA)

Dear Senator Madla:

You ask whether, consistently with section 573.041 of the Government Code, a home-rule municipality may appoint a department head who is related to the mayor within the third degree by consanguinity or the second degree by affinity if the city charter authorizes the city manager to "appoint, subject to consultation with the Board of Commissioners, all department heads."[1] *See* TEX. GOV'T CODE ANN. § 573.041 (Vernon 1994).

You state that a home-rule municipality's board of commissioners (the "Board") met in a regular meeting to consider several items of business, including the appointment of a department head. *See* Request Letter, *supra* note 1, at 1. The appointment was discussed in a closed meeting, but the Board took "'no action'" on the appointment in the subsequent open meeting. *Id*. Under the municipality's charter, the city manager may appoint a department head "subject to consultation with the Board of Commissioners." *Id*. Because the Board took "no formal action" on the city manager's recommendation, discussed in the closed meeting, you inform us that the city manager's recommendation "was in effect accepted, and the position was filled." *Id*. Nevertheless, when it was determined that the appointment violated the anti-nepotism statutes due to the newly appointed department head's relationship with the city mayor, the department head resigned "involuntarily." *Id*.

---

[1] *See* Letter from Honorable Frank Madla, Chair, Intergovernmental Relations Committee, Texas State Senate, to Honorable Greg Abbott, Texas Attorney General (Feb. 4, 2004) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

You inform us that the former department head is related to the mayor "within a degree that would allow section 573.041 of the Government Code to apply." *Id.* at 2. You further indicate that, under the city charter, "the mayor . . . has the right to vote." *Id.* Given that the Board did not vote on the city manager's recommendation in this situation (and, we presume, the former department head is not related to the city manager), you wish to know whether the department head's appointment violated section 573.041 of the Government Code. *See id.*

Section 573.041 prohibits a public official from appointing, confirming the appointment of, or voting to appoint or confirm

> an individual to a position that is to be directly or indirectly compensated from public funds . . . if
>
> > (1) the individual is related to the public official within [the third degree by consanguinity or the second degree by affinity]; or
> >
> > (2) the public official holds the appointment or confirmation authority as a member of a . . . local board . . . and the individual is related to another member of that board . . . within [the third degree by consanguinity or the second degree by affinity].

TEX. GOV'T CODE ANN. § 573.041 (Vernon 1994); *see also id.* § 573.002 (describing the degrees of relationship to which chapter 573 applies). A "public official" subject to section 573.041 includes "an officer . . . of a . . . municipality" and "an officer or member of a board . . . of a . . . municipality." *Id.* § 573.001(3). A public official who violates section 573.041 "shall be removed" from the official's position and "commits an offense involving official misconduct." *Id.* §§ 573.081(a), .084(a). An appointment that violates section 573.041 is void. *See* Tex. Att'y Gen. Op. No. GA-0177 (2004) at 2.

Typically, public officials with statutory authority to make appointments may not abdicate that authority by delegating it to an employee. *See* Tex. Att'y Gen. Op. No. GA-0073 (2003) at 2. Delegating "hiring decisions does not relieve the members of [a] governing body of" the nepotism law's requirements, even though, by delegating, the governing body does not appoint, confirm, or vote to appoint or confirm an individual—the actions to which the text of section 573.041 appears to be limited. Tex. Att'y Gen. Op. No. DM-2 (1991) at 1; *see* TEX. GOV'T CODE ANN. § 573.041 (Vernon 1994). But as the Eastland court of appeals made clear in 1981, and as this office consistently has concluded, section 573.041 applies to an officer who *may* exercise control over hiring decisions, even if the officer refrains from confirming, appointing, or voting in a particular case. *See Pena v. Rio Grande City Consol. Indep. Sch. Dist.*, 616 S.W.2d 658, 659 (Tex. Civ. App.–Eastland 1981, no writ) (stating that "[a] superintendent's recommendation to the school board concerning the appointment of teachers, even when consistently followed, cannot abrogate or limit" the board of trustees' exclusive statutory authority); Tex. Att'y Gen. Op. Nos. GA-0073 (2003) at 3; JC-0336 (2001) at 4; DM-2 (1991) at 1; *cf.* Tex. Att'y Gen. Op. No. GA-0123 (2003) at 2-4 (determining that a school board may, under an express Education Code provision, delegate to the superintendent final authority to select personnel).

A home-rule municipality may delegate appointing authority, and avoid the application of section 573.041 to the governing board, if it does so by charter. *Compare* Tex. Att'y Gen. Op. No. DM-2 (1991) at 2 (determining that a delegation made by ordinance could be repealed and, therefore, did not avoid the application of the anti-nepotism law to the appointment of a city council member's brother) *with* Tex. Att'y Gen. Op. No. O-5274 (1943) at 10 (determining that a municipality whose charter prohibited city council members from participating in hiring decisions avoided the application of the anti-nepotism laws to city council members). But the delegation must provide the delegatee full and final appointing authority and may not reserve any authority to the governing body. For example, in Attorney General Opinion O-5274, this office determined that, because the City of Brownsville's city charter delegated full hiring authority to the city manager, the city's governing body played no role in appointing city employees. Tex. Att'y Gen. Op. No. O-5274 (1943) at 10. The City of Brownsville's charter endowed the city manager with appointment authority and withheld all appointment authority from the members of the governing board:

> The City Manager . . . shall have the power to appoint and remove all officers and employees in the administrative service of the city . . . .

> Neither the City Commission, nor any of its committees or members, shall direct or request the appointment of any person to or his removal from office by the City Manager or any of his subordinates, or in any manner take part in the appointment or removal of officers and employees in the administrative service of the city.

*Id.* at 2-3 (quoting BROWNSVILLE CHARTER §§ 20, 21). Given the complete delegation of appointing authority, this office concluded that the anti-nepotism statute did not prohibit the city manager from hiring relatives of the city governing board members. *See id.* at 10.

Here, by contrast, while the charter delegates to the city manager some authority to appoint department heads, the charter plainly precludes the appointments from occurring until the city manager has consulted with the Board. This office ordinarily does not construe city charters, in deference to municipal officers' authority to construe their cities' charters. *See* Tex. Att'y Gen. Op. No. GA-0130 (2003) at 3; GA-0068 (2003) at 2 n.2; JC-0143 (1999) at 3. Nonetheless, the city charter at issue here expressly reserves to the board of commissioners some authority in the appointment of department heads: the city manager's appointment authority is "subject to consultation with the Board of Commissioners." Request Letter, *supra* note 1, at 1. While we cannot determine the extent of the Board's consultation authority, your letter indicates that the board may use its authority to accept or reject a particular appointment: since the Commission took no formal action, you aver, "the city manager's recommendation for the department head position was in effect accepted . . . ." Request Letter, *supra* note 1, at 1. Because the Board has retained authority to effectively accept or reject the city manager's recommendations, the Board members are public officials subject to section 573.041. *See Pena*, 616 S.W.2d at 659; Tex. Att'y Gen. Op. No. DM-2 (1991) at 1. We accordingly conclude that the municipality could not appoint the mayor's relative to a department head position.

You ask specifically whether the fact that the Board did not vote on the city manager's recommendation prevented a violation of section 573.041. *See* Request Letter, *supra* note 1, at 2. It is not the Board's lack of formal action in a particular case that takes Board members out of the category of public officials subject to section 573.041. Rather, it is their existing authority under the city charter to exercise their discretion to control hiring decisions that places them within section 573.041. *See Pena*, 616 S.W.2d at 659; Tex. Att'y Gen. Op. No. DM-2 (1991) at 1. Additionally, given the Board's authority to accept or reject an appointment, the Board's lack of action in any case is tantamount to a vote to accept the appointment. Thus, the Board did not prevent a violation of section 573.041 by its lack of formal action.

You also ask whether the mayor's participation in the closed-meeting deliberation among the Board members and the city manager regarding the mayor's relative's appointment "constitute[s] an action that" section 573.041 prohibits. Request Letter, *supra* note 1, at 2. It does. *See* Tex. Gov't Code Ann. § 573.041(1) (Vernon 1994). The mayor has, you aver, the right to vote and is therefore a public official with hiring authority subject to section 573.041. *Cf. City of Centerville v. Adkisson*, 291 S.W.2d 798, 800 (Tex. Civ. App.–Waco 1956, no writ) (concluding that a mayor who had no right to vote was not a city alderman). In addition, section 573.041 prohibits the Board itself from appointing the mayor's relative, regardless of the mayor's abstention. *See id.* § 573.041(2). Moreover, the appointment was void. *See* Tex. Att'y Gen. Op. No. GA-0177 (2004) at 2.

Your remaining question is premised upon a conclusion that the Board members did not violate section 573.041. Given our conclusion to the contrary, we need not answer it.

## S U M M A R Y

A home-rule municipality may delegate appointing authority to avoid the application of section 573.041 to the governing board, if it delegates full and final authority by charter, reserving no authority in the municipal governing body. Thus, a home-rule municipality charter that grants the city manager the power to "appoint, subject to consultation with the [city's governing board], all department heads," does not take board members out of the category of public officials who are subject to section 573.041 of the Government Code, which prohibits a public official from appointing a relative. In a city with such a city charter provision, a mayor with the right to vote on matters before the board may not participate in a consultation regarding the possible appointment of a person related to him or her within the third degree by consanguinity or the second degree by affinity. Section 573.041 additionally prohibits any other board member from participating in the consultation. In such a case, the appointment of the mayor's relative is void.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee